EUNICE FADANELLI, APPELLEE, V. NATIONAL SECURITY FIRE INSURANCE COMPANY, APPELLANT.

FILED OCTOBER 26, 1925. No. 23198.

1. Insurance: VALUED POLICY: TOTAL LOSS: MEASURE OF RECOVERY. "Under the valued policy law (Comp. St. 1889, ch. 43, sec. 43), the statute fixes the worth of the property insured conclusively at the valuation written in the contract of insurance, and in case of total loss, that sum is the measure of recovery." *Lancashire Ins. Co. v. Bush*, 60 Neb. 116.

2. ———: ———: ———: ———. "If, under a valued policy, the property insured is totally destroyed as the result of two or more fires, the measure of recovery for the final loss is the amount written in the contract less amounts paid in settlement of previous losses." *Lancashire Ins. Co. v. Bush*, 60 Neb. 116.

3. Constitutional Law: DELEGATION OF LEGISLATIVE POWER. "Authority to make rules and regulations to carry out an expressed legislative purpose, or for the complete operation and enforcement of a law within designated limitations, is not an exclusively legislative power. Such authority is administrative in its nature, and its use by administrative officers is essential to the complete exercise of the powers of all the departments." *State v. Howard*, 96 Neb. 278.

APPEAL from the district court for Douglas county: L. B. DAY, JUDGE. *Affirmed.*

Fadanelli v. National Security Fire Ins. Co.

*Montgomery, Hall & Young*, for appellant.

*J. E. Von Dorn* and *Baker & Ready, contra.*

Heard before MORRISSEY, C. J., DEAN, DAY, GOOD and THOMPSON, JJ.

PER CURIAM.

The appellant, an insurance company, hereinafter called the company, issued its policy upon the property of the appellee, hereinafter called the plaintiff, for the sum of $2,500. As a part of the policy is the following provision: "It shall be optional, however, with this company * * * to repair, rebuild, or replace the property lost or damaged with other of like kind and quality within a reasonable time on giving notice, within thirty days after the receipt of the proof herein required, of its intention so to do." This the company did.

The plaintiff relies upon the provision in the statute known as the valued policy provision, being section 7809, Comp. St. 1922. The company urges section 7836, Comp. St. 1922, in avoidance of this provision. Section 7836 is as follows:

"No fire insurance company shall issue any fire insurance policy covering any property or interest therein in this state other than on a form prescribed by the department of trade and commerce as nearly as practicable in the form known as the New York standard as now * * * constituted."

The precise question presented is: Do the provisions of the statute, section 7836, Comp. St. 1922, void or nullify the provision of section 7809, Comp. St. 1922?

Chapter 488, Laws of New York, 1886, sec. 1, provides:

"The superintendent of the insurance department shall prepare and file in the office of the secretary of state on or before the fifteenth day of November, eighteen hundred and eighty-six, a printed form in blank of a contract or policy of fire insurance, together with such provisions, agreements or conditions as may be indorsed thereon or added thereto and form a part of such contract or policy, unless the New York board of fire underwriters shall prepare, approve and

adopt a printed form in blank, of a contract or policy of fire insurance, together with such provisions, agreements and conditions as may be indorsed thereon or added thereto and form a part of such contract or policy, and file the same in the office of the secretary of state, on or before the fifteenth day of October, eighteen hundred and eighty-six, and such form when filed shall be known and designated as the 'Standard Fire Insurance Policy of the State of New York.' "

Section 121 of the insurance law of New York, being chapter 28, vol. 5, McKinney's Consolidated Laws of New York, is as follows:

"The printed blank form of a contract or policy of fire insurance, with such provisions, agreements or conditions as may be indorsed thereon or added thereto and form a part of such contract or policy, heretofore filed in the office of the secretary of state by the superintendent of insurance or by the New York board of fire underwriters pursuant to the provisions of chapter four hundred and eighty-eight of the laws of eighteen hundred and eighty-six shall be transferred by the secretary of state to the office of the superintendent of insurance and, together with such provisions, agreements or conditions as may be filed by the New York board of fire underwriters in the office of the superintendent of insurance and approved by him, which provisions, agreements or conditions shall be void if they are inconsistent with the standard fire insurance policy heretofore filed in the office of the secretary of state, shall be known and designated as the 'Standard Fire Insurance Policy of the State of New York.' No fire insurance corporation, its officers or agents, shall make, issue, or deliver for use, any fire insurance policy or the renewal of any such policy on property in this state, other than such as shall conform in all particulars as to blanks, size of type, context, provisions, agreements and conditions with such printed blank form of contract or policy; and no other or different provision, agreement, condition or clause shall be in any manner made a part of such contract or policy or indorsed thereon or delivered therewith."

"Kentucky Statutes, sec. 700, provides that in case of total loss by fire the insurer shall be liable for the full estimated value of the property as fixed in the policy. A policy provided that the company should not be liable beyond the actual cash value of the property at the time of the loss. *Held,* that such provision was of no validity, as the statute fixes the loss at the face of the policy where it is total.

"Section 700 provides that in case of a loss by fire the estimated value of the property may be diminished to the extent of any depreciation in value of the property occurring between the dates of the policy and the loss. *Held,* that a provision of a policy providing that the amount of loss shall be the cash value at time of loss, the proper deduction for depreciation, 'however caused,' is invalid.

"Section 700, provides that in case of a loss by fire the insurer shall be liable for the value of the property as fixed by the policy. *Held,* that, in so far as total loss is concerned, a provision of the policy providing that the loss 'shall in no event exceed what it would cost the insured to replace the building' is invalid.

"A policy provided that in case of difference between insured and insurer as to the amount of the loss the sum should be fixed by appraisers. *Held,* that, if the policy meant that the question whether there has been a total loss was to be submitted to arbitrators, the provision was void, as submitting a question of law as to what was a total loss within section 700, Kentucky Statutes." *Hartford Fire Ins. Co. v. Bourbon County Court,* 72 S. W. 739 (115 Ky. 109).

"Where the provisions of that act are in conflict with the provisions of the policy the act controls the policy." *White v. Connecticut Mut. Life Ins. Co.,* 29 Fed. Cas. No. 17545, p. 1011.

"A *casus omissus* in a statute cannot be supplied by a court of law, for that would be to make laws." *In re Contest Proceedings,* 31 Neb. 262.

In the construction of a statute effect must, if possible, be given to every clause, and one clause must not be placed

in antagonism to another.   *McIntosh v. Johnson,* 51 Neb. 33.

"Where one construction leaves a portion of a statute meaningless and nugatory, and another construction gives to the entire statute an intelligible and consistent meaning, the latter will ordinarily be adopted."   *Western Travelers Accident Ass'n v. Taylor,* 62 Neb. 783.

"An amended statute is to be construed, in its application to subsequent transactions, precisely as though it had been originally enacted in its amended form."   *Cass County v. Sarpy County,* 63 Neb. 813.

The certificate to the New York standard form of contract is in the following language:

"State of New York, Office of the Secretary of State, ss.:

"I have compared the preceding with the 'Standard Fire Insurance Policy of the State of New York,' prepared, approved and adopted by the New York board of fire underwriters with certificate and affidavit of the president and secretary of said board thereto annexed, filed in this office pursuant to chapter 488, Laws of 1886, on the fourteenth day of October, 1886, and do hereby certify the same to be a correct transcript therefrom and of the whole of said 'Standard Fire Insurance Policy of the State of New York,' and said certificate and affidavit so filed as aforesaid.

"Witness my hand and the seal of office of the secretary of state, at the city of Albany, this fourteenth day of October, one thousand eight hundred and eighty-six.

"Secretary of State."

It is therefore apparent from the laws quoted and the certificate that the terms of the policy, indeed the very provision under which the appellant defends, is the work of the board of underwriters of New York, and under the decision of this court in *State v. Howard,* 96 Neb. 278, that part of the insurance code which would leave the form of the policy or insurance code to the legislature of the state of New York or to the insurance commissioner of that state is void and unconstitutional, and that portion which in effect adopts or approves the form presented by the board

of underwriters is valid. As is pointed out by the appellant, in its brief, the valued policy provision of our insurance law has been a part of our law since 1889, while the provision adopting the New York standard form of policy was enacted in 1913. Under the constitutional provision the amended law was copied *in toto* into the insurance code. This included the valued policy provision of 1889.

In *Lancashire Ins. Co. v. Bush,* 60 Neb. 116, the valued policy provision was under consideration, and this court, speaking through Judge Sullivan, said:

"Under the valued policy law (Comp. St. 1889, ch. 43, sec. 43), the statute fixes the worth of the property insured conclusively at the valuation written in the contract of insurance, and in case of total loss, that sum is the measure of recovery."

"If, under a valued policy, the property insured is totally destroyed as the result of two or more fires, the measure of recovery for the final loss is the amount written in the contract less amounts paid in settlement of previous losses."

In the opinion of this case the court say: "The law in question was designed to repress an evil practice, to advance public interest and promote justice. It was an exercise of legislative power justified by consideration of public policy." Apparently the evil practices are still present and the same considerations were present in 1913 as were present in 1889. No reason appears for not enforcing the valued policy provision.

In considering the valued policy law of the state of Missouri, the United States supreme court, speaking through Justice McKenna, said:

"We see no risk to insurance companies in this statute. How can it come? Not from fraud and not from change, because, as we have seen, the presumptions of the statute do not obtain against fraud or change in the valuation of the property. Risk then can only come from the failure to observe care—that care which it might be supposed, without any prompting from the law, underwriters would ob-

serve, and which if observed would make their policies true contracts of assurance, not seemingly so, but really so, not only when premiums are paying, but when loss is to be paid. The state surely has the power to determine that this result is desirable, and to accomplish it even by a limitation of the right of contract claimed by plaintiff in error." *Orient Ins. Co. v. Daggs*, 172 U. S. 557.

The position of the appellant forces us to a construction of the following situation: The provision of the valued policy law makes it a part of the insurance contract, and in terms as follows: "Whenever any policy of insurance shall be written to insure any real property in this state against loss by fire, tornado or lightning, and the property insured shall be wholly destroyed, without criminal fault on the part of the insured or his assignee, the amount of the insurance written in such policy shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages." Comp. St. 1922, sec. 7809." In the same contract is a provision as follows: "It shall be optional, however, with this company * * * to repair, rebuild, or replace the property lost or damaged with other of like kind and quality within a reasonable time on giving notice, within thirty days after the receipt of the proof herein required, of its intention so to do."

In considering these provisions, it should be born in mind that this court has held: "Insurance upon a building is insurance upon a building as such and not upon the materials of which it is composed." *Insurance Co. of North America v. Bachler*, 44 Neb. 549. See *German Ins. Co. v. Eddy*, 36 Neb. 461.

Where real property is wholly destroyed by fire, any provision of the policy of insurance covering such property which in any manner limits the amount of the loss at less than the sum written in the policy is in conflict with the statutory rule, invalid, and will not be enforced.

In *State v. Howard, supra*, this court said. "We are of the opinion that it was the intention of the legislature that

the New York form should be adopted as the basis of the insurance contract, and that the words 'as nearly as practicable' should be construed to mean as nearly as practicable considering the other provisions contained in the insurance code which in anywise are inconsistent with or modify the provisions of the New York standard form of contract." Can it be said, without doing violence to the ordinary and accepted meaning of terms, that a payment of the amount fixed in the policy by the assured and for which he has received and accepted the premium, in place of meaning dollars, means plank, building materials, labor, materials, etc.? If a payment were tendered to the insurer in like commodities, would they accept it in place of the dollars they fixed as the premium due upon the policy in suit, and, failing so to do, upon what course of reasoning may the company consistently ask to satisfy its liability in other and less valuable commodities than that which it required and received? The answer is obvious.

The valued policy act was designed to repress an evil practice, and thereby advance public interest and promote public justice by securing for the assured a policy payment, in the event of total loss, of the full amount of indemnity for which he contracted, and for which he paid. In the present instance we have a recurrence of the evil practices above referred to, to wit: The endeavor to secure a settlement by the insurer for less than his contract in terms imposes upon him. This conclusion certainly cannot be gainsaid. It must be admitted that the purpose of the rebuilding clause in the policy in question, and its only purpose, was and is that it might enable the defendant company, in case of a total loss, to discharge its liability on the policy by an expenditure of a less sum of money than would be required to pay the amount of insurance named in the policy. In no other way could the company derive any benefit from that clause. If the expense of rebuilding would exceed or even equal the amount of the insurance mentioned, there could be neither advantage nor object on the part of the company to undergo that trouble, and when the expense is

less the performance of that condition by rebuilding the destroyed property would be but a mode of satisfying the obligations of the company by payment to persons other than the assured of a sum less than became payable on the policy according to the provisions of the statute. Thus, the evident purpose by this method is to accomplish by indirection the effect of a transaction expressly prohibited by the ordinary construction of the terms of the section of the statute involved. Particularly is this true in the light of the Nebraska decisions heretofore cited, which were made prior to the adoption of the act of 1913, and which decisions construed the identical language which now appears in the present insurance code. A fair consideration of the doctrines and principles, announced in these decisions referred to, leads to no other conclusion than that agreements for rebuilding and replacement, such as are contained in the policy in suit, and on which the company relies, are repugnant to the provisions of section 43, ch. 43, Comp. St. 1889. Now, the language construed in these decisions appears as reenacted without modification or the slightest change in the act of 1913. The ordinary canon of construction applicable to this situation is that the reenactment of a statute which had been theretofore construed continues the situation as it was, and by implication makes the judicial construction, theretofore had, an essential part of the statute thus reenacted. Therefore, the legislature in adopting or reenacting this provision and making it a part of the insurance code of 1913, by fair construction, adopted and continued in force and effect the judicial construction theretofore placed upon it. *State v. Cornell*, 54 Neb. 647.

Keeping in mind the reasons that caused the adoption of this statute, the evils sought to be repressed thereby, giving the provisions of section 7809, Comp. St. 1922, full force and effect, and as bearing the judicial construction that was given it by this court prior to 1913, and giving section 7836, Comp. St. 1922, a construction identical with that applied by this court in *State v. Howard, supra*, it follows that the provisions of section 7809 are wholly unmodified by section

7836, Comp. St. 1922, and that the "insurance board" are without authority to retain any clause or provision of the "New York Standard Policy" which would in the slightest degree modify or impair the rights guaranteed or secured by section 7809; that this is fully expressed in the words "a form prescribed by the insurance board *as nearly as practicable* in the form known as the New York standard as now * * * constituted." Therefore, the provisions of the form must yield to the terms of the statute, and, where inconsistent, the terms of the statute must prevail. It follows that the provision of the policy in suit providing for replacement or rebuilding at option of insurer are, as applied to cases of total loss, repugnant to section 7809, Comp. St. 1922, and invalidated thereby, and would thus afford no basis or foundation for the defense sought to be made by the company in this action. The judgment of the district court is

AFFIRMED.

Note—See Fire Insurance, 26 C. J. secs. 453, 601.